**Urvashi BHATNAGAR, an Infant by her Mother and Natural Guardian, Kalpana BHATNAGAR, And Kalpana Bhatnagar, Individually**

v.

**SURRENDRA OVERSEAS LIMITED, Apeejay Lines, in personam, and The M/V APJ KARAN, her engines, boilers, etc. in rem.**

Civ. A. No. 92–6321.

United States District Court,
E.D. Pennsylvania.

Oct. 7, 1993.

Stanley P. Kops, Law Offices of Stanley P. Kops, Philadelphia, PA, Harold Gordon, Kahn & Gordon, P.C., New York City, for plaintiffs.

William G. Downey, Clark, Ladner, Fortenbaugh & Young, Philadelphia, PA, for defendant.

## FINDINGS OF FACT

KATZ, District Judge.

### BACKGROUND

1. Minor Plaintiff, Urvashi Bhatnagar, was born on April 5, 1984.

2. On November 14, 1990, Plaintiff's father, Mr. Sanjay Bhatnagar, signed an Employment Contract in India with Claimant to the Res (defendant) Surrendra Overseas Limited to sail aboard the APJ KARAN as additional Chief Engineer. The contract was for a period of six (6) months.

3. In November, 1990, Mr. Bhatnagar commenced his service aboard the vessel APJ KARAN.

4. Surrendra Overseas Limited is and was at all relevant times the owner and operator of the vessel APJ KARAN.

5. The vessel APJ KARAN trades in international commerce and at all relevant times called at various ports in the world including the United States.

6. Surrendra Overseas Limited is an Indian shipping company which owns and operates eight (8) ships which trade in international commerce and some or all of which have called during all relevant times at ports in the United States.

7. The APJ KARAN has made a total of 27 calls to ports in the United States between 1988 and 1992, out of a total of 118 port calls during the said period.

8. Surrendra Overseas Limited operates and manages its vessels including the APJ KARAN from and through the offices of its subsidiaries, affiliates, agents and associates in Great Britain.

9. Mr. & Mrs. Bhatnagar as well as the minor plaintiff and her brother are citizens of India.

10. All plaintiffs were permitted by the defendant to sail on board the APJ KARAN with Mr. Bhatnagar. Defendant assisted the plaintiffs in facilitating the arrangements to join the vessel in Portland, Oregon.

11. In February, 1991, plaintiff Urvashi boarded the vessel M.V. APJ KARAN, together with her one and a half year old brother, Varun Mohan, and her mother, plaintiff Kalpana Bhatnagar, at the port of Portland, Oregon.

12. From approximately February 19, 1991 through February 23, 1991, the vessel loaded a cargo of grain at Portland, Oregon destined for Alexandria, Egypt.

13. On February 23, 1991, the vessel sailed from Portland, Oregon down the West Coast of the United States, crossing through the Panama Canal.

14. The ship's rules and regulations designated restricted areas where unauthorized persons and children were not allowed entry. One such area was the Bridge of the ship

which was off limits to all unauthorized persons, without any exceptions.

15. On the door at the top of the stairs leading to the bridge there was a sign that stated "off limit."

## THE ACCIDENT

16. On March 17, 1991, the ship's steward, Mr. Abdul Mutalib, took the plaintiff, Urvashi, to the bridge of the vessel.

17. At the time in question the duty watch officer was on the bridge together with the duty helmsman. The duty watch officer's duties included enforcing the ship's rules that the Bridge of the ship was off limits to all unauthorized persons.

18. At approximately 4:00 p.m. while the plaintiff and Mr. Mutalib were on the bridge, the helmsman picked up plaintiff Urvashi and placed her on a ledge in front of the clear view screen on the bridge.

19. The purpose of the clear view screen is to provide a clear view for the vessel's officers and crew standing watch on the Bridge. The clear view screen keeps off rainwater. It was raining at the time of the accident and the clear view screen was turned on and revolves at a high rate of speed.

20. The helmsman of the vessel showed the minor plaintiff how to put her hand on the clear screen a part of a "game." He feigned putting the palm of his hand on the clear screen and asked her to do likewise. When minor plaintiff placed her hand on the clear view screen, her right hand and portions of her arm were injured. The helmsman fainted on the bridge.

21. The defendant admits that the acts of the helmsman and steward were negligent. The steward was taking tea to the duty officer on the bridge at the time just before the accident.

22. The duty officer, who is in charge of the bridge, did not stop the helmsman and steward from acting negligently. The duty officer should have known of their permitting the minor plaintiff to play on the bridge.

23. The duty officer, acting for the defendant, breached the duty of care owed to plaintiffs by permitting the minor plaintiff to be on the bridge, an unauthorized area, and on the ledge in front of the clear view screen. The duty officer should have known of the minor plaintiff's presence on the bridge.

24. The duty officer's failure to stop the helmsman's and steward's negligent acts was a substantial factor in bringing about the harm to the plaintiff.

25. Plaintiff's injury was proximately caused and caused in fact by defendant's breach of duty owed to plaintiff.

26. It was reasonably foreseeable to the duty officer that plaintiff was in danger of sustaining injury on the bridge in general and on the ledge in front of the clear view screen in particular.

27. Plaintiff's hand bled profusely, a tourniquet was applied to stop the bleeding. Upon examination it was found that the flesh around her wrist was torn apart and her thumb and palm were torn by the impact. The ship's crew attempted to stop the bleeding.

28. The United States Coast Guard was contacted for emergency treatment instructions. The Coast Guard instructed the vessel to divert its course so that the child could be evacuated for further medical assistance.

29. At the time of the accident the vessel in international waters of the Atlantic Ocean.

30. The vessel was diverted to Antigua where the plaintiff, her mother and her brother were evacuated from the vessel.

## AFTER LEAVING THE SHIP

31. On March 20, 1991, the plaintiff received emergency treatment at the Holberton Hospital before leaving Antigua. Antigua could not provide full medical attention and arrangements were made with the approval of the defendant for the plaintiffs to enter the United States at San Juan and then fly to New York with minor plaintiff to undergo emergency medical treatment.

32. The plaintiffs were met in New York by relatives who are medical doctors who are plaintiff's aunt and uncle.

33. Defendant's Protection and Indemnity Association arranged for the payment of some of minor plaintiff's medical expenses.

34. Plaintiff was admitted to Huntington Hospital, in Huntington, New York.

35. Plaintiff has been treated by Dr. Jerry L. Ellstein, Assisting Clinical Professor of Orthopaedic Surgery at the State University of New York at Stony Brook.

36. Since March 20, 1991, when the plaintiff entered the United States, she has undergone six (6) operations:

a. Minor plaintiff was admitted for surgeries to Huntington Hospital on March 21 and discharged on April 4, 1991. Dr. Ellstein performed the operation to clean minor plaintiff's right hand wounds on March 21, 1991. A second operative procedure performed on March 23, 1991, which consisted of a dressing change, and tendon grafting. A third operation was performed on March 26, 1991, by Dr. Ellstein, which included applying a pedicled groin flap to the hand.

b. She was admitted again on April 25, 1991, and operated on April 26, 1991, for detachment and insetting of the flap closure of the donor site. She was discharged on April 27, 1991. The operation leaves a groin area scar.

c. Minor plaintiff was again admitted to Huntington Hospital on September 13, 1991, when Dr. Ellstein performed nerve grafting to both the median and ulnar nerves and defatted the groin flap. The minor plaintiff was discharged from the hospital on September 15, 1991. The operation leaves some nerve damage to the leg site of the nerve grafting and a left leg scar.

d. Dr. Ellstein performed an operative procedure on May 8, 1992 which he excised pyogenic granuloma with flap advancement.

37. Plaintiff has received treatment at the East Huntington Orthopaedic Group, P.C., Huntington, New York, The Hand Center for Surgery and Rehabilitation of the Hand, Huntington, New York.

38. On September 24, 1992, Dr. Ellstein examined plaintiff again and noted that she continued to do extremely well. Dr. Ellstein discussed with Mr. Bhatnagar the possibility of a cosmetic further out-patient procedure, further defatting of the minor plaintiff's radial side of her flap.

39. Also Dr. Ellstein met with plaintiffs on September 24, 1992, for the purpose of aiding the minor plaintiff in further exercises and activities with her hand therapy at home.

40. Plaintiff's parents had requested that he perform the defatting procedure. Scar removal from the leg and groin is also necessary. She has done remarkably well to date, with return of most sensibility in hand, and excellent digital and wrist range of motion.

41. Plaintiff expects to undergo a seventh operation in the near future.

42. Minor plaintiff has undergone therapeutic exercises in order to increase the motion and strength in her hand by a therapist and at home supervised by her mother.

43. Dr. Ellstein's testimony and medical records set forth the operative procedures performed by him. Her current status was reported from a August 9, 1993 examination.

44. Mrs. Bhatnagar and her children resided with relatives in West Islip, New York from March 20, 1991 to the present.

45. Plaintiff is naturally right-handed. The plaintiff has taught herself how to write with her left hand. She now uses her left hand as her hand of choice. Her penmanship is significantly better when she uses her left hand, then when she uses her right hand.

46. Plaintiff is and has been attending school in West Islip, New York.

47. Plaintiffs intend to reside in the United States permanently, if possible.

48. Plaintiff Kalpana has not demonstrated a loss of service as a result of plaintiff Urvashi's injury. Nor has plaintiff proven any permanent psychiatric injury.

49. Plaintiffs have not proven a future loss of income or impairment of earning capacity as a result of the accident. Nor a loss of marriage prospects. The testimony of plaintiffs' rehabilitation counselor was not persuasive. It is highly speculative and conjectural to believe the minor plaintiff will suffer such losses in the future. It is purely arbitrary and unbelievable to suggest that the minor plaintiff will suffer a diminution of

earning capacity. She is bright, a good student, attractive and likely to do well in the future.

50. Plaintiff Urvashi is entitled to recover for "pecuniary" losses, including reasonable and necessary past medical expenses totaling $33,133 and future medical expenses totaling $6,000.

51. Plaintiff Urvashi sustained "non-pecuniary" losses, including pain and suffering, disability, disfigurement, loss of enjoyment of life, mental anguish and emotional injury, past, present and future as a result of the accident, for which reasonable compensation is $150,000.

## CONCLUSIONS OF LAW

1. This case is an in rem admiralty case.

2. Because this is an admiralty case, the court has considered seven factors in determining what law to apply to this case:

(1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured seaman; (4) allegiance of the defendant shipowner; (5) the place where the contact of employment was made; (6) the inaccessibility of a foreign forum; and (7) the law of the forum.

*Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 308, 90 S.Ct. 1731, 1734, 26 L.Ed.2d 252 (1970) (citing *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953)). The court also considered the place where the minor plaintiff boarded the ship and the minor plaintiff's present residence.

■ 3. The substantive law of India should be applied to this case.

4. Indian law determines compensation based on the facts and circumstances of each case. *Haryana State v. Raizada*, 1991 ACJ 54, 59; *Sahoo v. Sethim*, 1991 ACJ 486, 471. There are "no hard and fast rule[s]" determining the compensation to be awarded in any given case. *Sahoo*, 1991 ACJ at 471.

■ 5. In assessing a damage award Indian law requires that:

one must ask whether the sum awarded is a fair sum, ... It is an accepted principle that while awarding the compensation in injury case, one should keep in mind that

the amount awarded to the claimant is just. The pecuniary loss as well as the non-pecuniary loss suffered have to be borne in mind while calculating the amount of compensation to be awarded. The money awarded has to be reasonable and fair. The claimant is entitled to the full compensation of the properly estimated pecuniary loss.

*Haryana State*, 1991 ACJ at 59.

6. Injured plaintiffs may recover for both pecuniary and non-pecuniary damages. *Samanta v. M.D. Orissa Road Trans.*, 1991 ACJ 995, 998. Non-pecuniary damages include inconvenience, hardship, discomfiture, disappointment, frustration and mental stress. *Samanta*, 1991 ACJ at 998–99.

7. Plaintiffs may recover for both past and future pain and suffering. *Haryana State*, 1991 ACJ at 59; *Samanta*, 1991 ACJ at 998. India also recognizes that "pain and suffering cannot be measured and compensated with an exact amount but there has to be reasonable nexus." *Haryana State*, 1991 ACJ at 60. In determining compensation, Indian courts consider the injuries suffered by the plaintiff, the number of operations she had to undergo and the length of time spent in the hospital. *Id.*

8. Under Indian law, interest may be awarded from the date the complaint was filed. *Oriental Ins. Co., Bangalore v. S. Jagadish*, A.I.R. 1991 Kant. 258, 263.

## JUDGMENT

**AND NOW,** this 7th day of October, 1993, it is hereby **ORDERED** that judgment is entered in favor of plaintiffs and against the defendants in the amount of $189,331.00, together with prejudgment interest at the rate of 9% from the date the complaint was filed. This judgment attaches only in rem.